UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| RODNEY BECKHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 14-CV-159-HRW |
| v. | ) | |
| | ) | |
| JOHNATHAN KEATON, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |

**** **** **** ****

Rodney Beckham is an inmate confined by the Kentucky Department of
Corrections ("KDOC") in the Kentucky State Reformatory ("KSR") which is
located in La Grange, Kentucky. Prior to his confinement in the KSR, Beckham
was confined in the Eastern Kentucky Correctional Complex ("EKCC"), which is
located in West Liberty, Kentucky.

In June 2014, Beckham filed this *pro se* 42 U.S.C. § 1983 civil rights
action,[1] challenging various conditions of his confinement at the EKCC. Beckham

---

[1] Beckham filed this action on June 17, 2014, in the United States District Court for the Western
District of Kentucky ("the Western District"). [D. E. No. 1; *Beckham v. Keaton*, No. 3:14-CV-
444-R (W.D. Ky. 2014)]  On July 29, 2014, the Western District granted Beckham pauper status
*see* D. E. No. 7, but on October 30, 2014, the Western District transferred Beckham's § 1983
action here, based on the venue considerations set forth in 28 U.S.C. 1391(b). *See* D. E. No. 8.

alleged that one of the EKCC defendants[2] sexually harassed and assaulted him, in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution, which prohibits cruel and unusual punishment; that when he complained of the alleged sexual harassment and sexual assault, other EKCC officials retaliated against him in violation of his rights guaranteed under the First Amendment of the U.S. Constitution; and that some or all of the defendants violated the provisions of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.* The Court has conducted a preliminary review of Beckham's complaint because he asserts claims against government officials and because he has been granted *in forma pauperis* status in this action.

Because Beckham is proceeding without an attorney, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). As explained below, the Court will allow Beckham's Eighth Amendment claims alleging sexual abuse to proceed against Defendant Jonathan Keaton, but will dismiss the other claims which Beckham asserts in this action.

---

[2]  The named defendants are:  (1) Jonathan Keaton, EKCC Correctional Officer, EKCC; (2) Gary Beckstrom, EKCC Warden; (3) David Bradly, KDOC Compliance Manager; and (4) LaDonna Thompson, KDOC Commissioner.

2

## ALLEGATIONS OF THE COMPLAINT

Beckham alleges on that May 5, 2013, while he was working as a cook at his prison job at the EKCC, Correctional Officer Jonathan Keaton sexually harassed and sexually assaulted him.  Beckham alleges that on that date, Keaton approached him from behind and placed his hands on his (Beckham's) buttocks, and that while Keaton was holding his own crotch area, he said to Beckham, "Let me see if this fits."  [D. E. No. 1, p. 4; *see also*, attachment to Beckham's complaint, D. E. No. 1-2, p. 1]  Beckham alleges that he told Keaton never to put his hands on him again, and that he was going to report him for inappropriately touching him, and that Keaton responded, "Do what you gotta do mother f****r!" [*Id.*]

Beckham states that he filed a sexual harassment complaint against Keaton and submitted it to EKCC Caseworker Nikki Clifford; that he gave an interview to Lieutenant Helton in which he recounted the alleged events concerning Keaton; and that Nurse Bonnie Elam examined his buttocks, but found no marks or bruises. [D. E. No. 1-2, p. 2]  Beckham states that he was offered protective custody but refused it, *see* D. E. No. 1, p. 5, and that while Helton interviewed him, Helton was hostile toward him and threatened to lock him up.  [D. E. No. 1-2, p. 2]

Beckham states that on May 7, 2013, he was taken to the office of Probation and Parole, at which time he gave a recorded interview to Internal Affairs

3

Lieutenant "Back," and another man whose name Beckham did not know; that the two men asked Beckham if he would take a polygraph test; and that he responded that he would be happy to do so. Beckham states that later that day, he received a disciplinary report in which he was charged with asking Correctional Officer Keaton to bring him (Beckham) three pounds of tobacco into the EKCC, which is a tobacco-free facility [D. E. No. 1, p. 5; D. E. No. 1-2, p. 2]

Beckham alleges that Keaton lied about the tobacco disciplinary charge to conceal his actions of May 5, 2013, and that the disciplinary charge was issued in retaliation for his having complained about Keaton's alleged sexual misconduct. Beckham asserts that as a result of the disciplinary report, he was convicted of the charged offense; that he lost six years of good-time credits ("GTC"); that he lost his prison job and several other institutional privileges; that he was placed in a restrictive dormitory; and that other EKCC inmates threatened him for "ratting on" Correctional Officer Keaton. [*Id.*]

Beckham further alleges that information concerning his sexual harassment/sexual abuse allegations against Correctional Officer Keaton was improperly released to the prison population, and that he thought that his complaints against Correctional Officer Keaton were to have remained confidential under the PREA. [*Id.*] Beckham alleges that on May 21, 2013, he was medicated

4

and placed on suicide watch, and that he was eventually placed in protective custody and remained there until he was transferred to the KSR on August 2, 2013. [D. E. No. 1-2, p. 3]

Beckham states that on October 7, 2013, he filed a grievance with the prison grievance office and that he received a response stating that an investigation into his claims was on-going; that on October 18, 2013, he received a report from the Offender Information Specialist stating that no investigation or complaint had ever been filed; and that on October 21, 2103, he filed a criminal complaint with the Morgan District Attorney's Office, but that no action was taken in response to his criminal complaint. [D. E. No. 1, p. 6]

Beckham alleges that he was sexually abused as a child, *see* D. E. No. 1-2, p. 3, and that Keaton's actions of May 5, 2013, have caused him to experience emotional distress, mental trauma/Post-Traumatic Stress Disorder, and suicidal thoughts. *Id.* He further claims that the neither the "KSR" nor the "EKCC staff members" properly investigated his sexual assault/harassment allegations against Correctional Officer Keaton in accordance with the PREA. [D. E. No. 1, p. 6] Beckham also appears to be claiming that Defendant David Bradley, KDOC official and PREA Compliance Manager, failed to comply with the PREA and thus violated his rights under that statute.

5

Beckham seeks $500,000 in compensatory damages from the defendants in both their official and individual capacities; $1 million in punitive damages from the defendants in both their official and individual capacities; an order directing "full compliance" with PREA; and a trial by jury. [*Id.*, 7]

## DISCUSSION
### 1. Alleged Constitutional Violations

Beckham alleges that EKCC Correctional Officer Jonathan Keaton sexually abused him and sexually harassed him in violation of his Eighth Amendment rights. Under the Eighth Amendment, punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment...." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam).

The Court will first address the claims which Beckham asserts against all of the four named defendants in their *official* capacities. These claims cannot proceed, because they are barred by the Eleventh Amendment of the U.S. Constitution. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004); *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994). "An official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." *Colvin v. Caruso*, 605 F.3d 282, 289

6

(6th Cir. 2010) (citing *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009)). Beckham provides nothing to indicate that the Commonwealth of Kentucky has waived its Eleventh Amendment immunity with respect to alleged constitutional torts, and the Court finds no authority to support such a proposition. Therefore, all of the constitutional claims which Beckham asserts against the four named defendants in their *official* capacities will be dismissed for failure to state a claim upon which relief can be granted.

The Court now turns to the constitutional claims which Beckham asserts against the four named defendants in their *individual* capacities. Beckham alleges that on May 5, 2013, EKCC Correctional Officer Keaton physically touched his (Beckham's) buttocks while making a sexually suggestive comment. Because Beckham alleges that Keaton physically touched him in a sexually and inappropriate manner, his Eighth Amendment claim against Keaton, in his individual capacity may proceed. *See Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept, 16, 2014) (allowing case to proceed where prisoner alleged that prison officials engaged in inappropriate sexual contact with him during pat-downs). Keaton will be required to respond to the allegation of sexual abuse based on alleged physical contact.[3]

---

[3] Beckham alleges that in October 2013, he filed a criminal complaint in the Morgan Circuit Court, see D. E. No. 1-2, p. 7, but that no action was taken on his criminal complaint. In ordering Defendant Jonathan Keaton to respond to Beckham's Eighth Amendment claim

7

The Court will, however, dismiss Beckham's related Eighth Amendment claims alleging sexual harassment, *i.e.*, his claims that on May 5, 2013, Keaton made inappropriate verbal comments, jokes, or taunts of a sexual nature. Such allegations consist at best of only verbal abuse, and verbal abuse and harassment, while unprofessional and despicable, do not constitute punishment that supports an Eighth Amendment claim. *Wingo v. Tenn. Dep't of Corr.*, 499 Fed. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.") (citing *Ivey*, 832 F.2d at 954-55); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse].."); *Montgomery v. Harper*, No. 5:14CV-P38-R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) (dismissing claims based on mere allegations of verbal sexual abuse); *see also Searcy v. Gardner*, Civil No. 3:07–0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

---

alleging sexual abuse, this Court assumes that there are no criminal charges against Keaton pending in the Morgan Circuit Court. If Keaton is in fact facing pending criminal charges, he may so elaborate in his Answer.

In sum, "[a]cts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment." *Calvert v. Weatherford*, No. 3:13-CV-00274, 2013 WL 1937690, at *2 (M.D. Tenn. May 9, 2013). Accordingly, Beckham's claim alleging that Correctional Officer Jonathan Keaton sexually harassed him through verbal means will be dismissed for failure to state a claim upon which relief can be granted.

Next, Beckham names EKCC Warden Gary Beckstrom, KDOC/PREA Compliance Manager David Bradley, and KODC Commissioner LaDonna Thompson as defendants to this action, and asserts § 1983 claims against them in their individual capacities, but he alleges no facts indicating that these three defendants were directly or personally involved in the alleged sexual abuse activity which he specifically attributes to EKCC Correctional Officer Jonathan Keaton. Nor does Beckham allege that any of these three defendants were involved the decision to charge him with a disciplinary violation, which decision he describes as a retaliatory action taken in direct response to his having filed the sexual abuse/sexual harassment complaint against Defendant Jonathan Keaton. Beckham thus appears to be claiming that these three defendants are liable to him under the doctrine of *respondeat superior*, through which a superior can be held liable for the actions of an employee.

If that is the basis of Beckham's claims against these defendants, Beckham cannot proceed against them because *respondeat superior* liability is not available as a means of recovery under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–92 (1978); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also*, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (the respondeat superior doctrine does not apply in § 1983 actions); *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) (same).

To the extent that Beckham contends that these defendants improperly denied his administrative grievances and thus denied him due process of law in violation of his Fourteenth Amendment rights, he states no claim upon which relief can be granted. The mere denial of prisoner grievances by supervisory or higher-ranking administrative officials is insufficient personal involvement for imposing constitutional liability, under § 1983. *See Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012); *Alder v. Correctional Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001); *Shehee v.*

10

*Luttrell*, 199 F.3d at 300.  Further, prisoners have no inherent constitutional right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Overholt v. Unibase Data Entry, Inc.*, 221 F.3d 1335, 2000 WL 799760, at *3 (6th Cir. June 14, 2000) (Unpublished); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).

Because Beckham alleges no facts alleging that Beckstrom, Bradley, or Thompson, engaged in any unconstitutional wrongdoing, his constitutional claims against them in their *individual* capacities will be dismissed for failure to state a claim upon which relief can be granted.

### 2. Challenge to Disciplinary Conviction and Loss of GTC

Next, Beckham challenges the fact that he lost a substantial amount of GTC stemming from his prison disciplinary conviction for bringing three pounds of tobacco into the tobacco-free EKCC.  To the extent that Beckham seeks compensatory and punitive damages resulting from the loss of his GTC, his claims must be dismissed without prejudice as premature.

Assuming that Beckham was in fact convicted of this offense and that he did in fact lose GTC as a result of the disciplinary conviction, Beckham cannot assert claims and seek damages under § 1983 unless and until he can demonstrate a favorable termination of his disciplinary convictions.  In *Heck v. Humphrey*, the

11

Supreme Court established the so-called "favorable termination rule." 512 U.S.

477, 114 S.Ct. 2364 (1994).  The Court explained that rule as follows:

> [T]o recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such a determination, or called into
> question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254.

*Id.*, at 486-87.

The Supreme Court has held that any claim for damages that, if successful,

would "necessarily imply" the "invalidity of any outstanding criminal judgment

against the plaintiff" is not cognizable under § 1983 unless the plaintiff

demonstrates that judgment's prior invalidation.  *Id.*, at 487  This rule promotes the

finality of and consistency in judicial resolutions by limiting opportunities for

collateral attack and averting the "creation of two conflicting resolutions arising

out of the same or identical transaction." *See id.*, at 484-485.

In *Edwards v. Balisok*, the Supreme Court later extended the "favorable

termination rule" to a prison disciplinary hearing resulting in the deprivation of

good-time credits, where the prisoner's civil rights action alleging the denial of his

due process rights would "necessarily imply" the invalidity of the deprivation of

good-time credits.    520 U.S. 641, 646 (1997).    The Supreme Court has

subsequently clarified that a prisoner is required to show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence is affected. *See Muhammad v. Close*, 540 U.S. 749 (2004).

Because Beckham's disciplinary sanction included the forfeiture of GTC, he appears to be placing the duration of his prison sentence at issue. Beckham claims that Keaton and/or other EKCC officials caused the disciplinary charge to be filed against him as a pretext, because he had filed a complaint charging Keaton with sexual harassment and sexual assault. Beckham contends that the disciplinary charge was bogus and completely lacking in any factual basis; was issued in retaliation for his having filed the sexual misconduct charge against Keaton; and was thus a violation of his First Amendment rights. If Beckham were to succeed on those First Amendment retaliation claims in this § 1983 action, he would thus necessarily invalidate the EKCC's disciplinary determination under which he was found guilty of improper conduct and through which he lost his GTC.

A prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction. *See Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000); *see also*, *Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (finding that prisoner was precluded from collaterally attacking prison misconduct hearing or conduct

underlying disciplinary conviction by alleging retaliation under 42 U.S.C. § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable.") Because the loss of GTC directly affects the duration of Beckham's prison sentence, Beckham must demonstrate a "favorable determination" of his prison disciplinary conviction under *Edwards* and *Muhammad* before he can seek damages related to that conviction under § 1983.

To establish a favorable termination, Beckham must first successfully challenge the validity of his disciplinary conviction by filing of writ of habeas corpus pursuant to 28 US.C. § 2241. Beckham must first administratively exhaust such claims which directly challenge his disciplinary conviction within the KDOC's administrative remedy process. The Court takes no position as to whether the KDOC administrative remedies which Beckham has already pursued would suffice for purposes of challenging his disciplinary conviction. If, and only if, Beckham's prison disciplinary conviction is invalidated during that process, may he then bring a civil action for the alleged harm caused by the facts which

resulted in his disciplinary conviction and resulting sanctions. Beckham's § 1983 claim challenging the loss of his GTC and his related First Amendment claim alleging retaliation will therefore be dismissed without prejudice to his filing a writ of habeas corpus under 28 U.S.C. § 2254, and obtaining a favorable termination of his disciplinary conviction for bringing a tobacco product into the EKCC.

### 3. Alleged Violations of the PREA

Finally, Beckham further alleges that Defendants Beckstrom, Bradley, and Thompson failed to properly document, process, respond to, and keep confidential his complaint alleging that EKCC Correctional Office Keaton had sexually assaulted and harassed him.[4]   Beckham thus asserts that their alleged acts or omissions in that regard violated his rights under the PREA.  Those claims lack merit, because the PREA does not provide a private right of action.

Where neither the text nor the structure of a statute indicate that Congress intended to create new individual rights, "…there is no basis for a private suit, whether under § 1983 or under an implied right of action."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002).  The Sixth Circuit Court of Appeals has not addressed this issue, but many district courts (including our sister court in the Western District) have found that the PREA does not create a private cause of action which

---

[4]   As noted, Beckham also claims that unidentified officials of the KSR, where he is currently confined, have failed to comply with the PREA.  *See* D. E. No. 1, p. 5.  Normally, any claims against KSR officials would have to be brought in the Western District, but for the reasons set forth *infra*, this claim lacks substantive merit regardless the identity of the defendants.

can be brought by an individual plaintiff. *See, e.g., Simmons v. Solozano*, No, 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014) (dismissing prisoner's § 1983 claim alleging violations of the PREA, finding that the statute creates no private right of action); *Montgomery v. Harper*, No. 5:14CV–P38–R, 2014 WL 4104163, at *3 (W.D. Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11-CV-1290(VLB), 2013 WL 628648, at *2 (D. Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act.").[5]

Given this considerable authority, this Court agrees with the Western District and concludes that the PREA creates no private right of action. Beckham's claims alleging violations of the PREA and his demand for damages

---

[5] *See also, Faz v. N. Kern State Prison*, No. CV-F-11-0610-LJO-JLT, 2011 WL 4565918, at *5 (E.D. Cal. Sept. 29, 2011) ("[T]he PREA does not create a private right of action...."); *Woodstock v. Golder*, No. 10-CV-00348-ZLW–KLM, 2011 WL 1060566, at * 9 (D. Colo. Feb. 7, 2011) ("PREA provides no private right of action.") (citation omitted).  "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue.... The statute does not grant prisoners any specific rights." *Chinnici v. Edwards*, No. 1:07-CV-229, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008).

stemming from that alleged violation must therefore be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Accordingly, the Court being duly advised, **IT IS ORDERED** as follows:

1.     Plaintiff Rodney Beckham's Eight Amendment claims alleging verbal sexual harassment asserted against Defendant Jonathan Keaton, EKCC Correctional Officer, are **DISMISSED WITH PREJUDICE**.

2.     Beckham's Fourteenth Amendment claims against defendants Gary Beckstrom (EKCC Warden), David Bradley (KDOC official/PREA Compliance Manager), and LaDonna Thompson (KDOC Commissioner), alleging the denial of due process of law in connection with the EKCC grievance process are **DISMISSED WITH PREJUDICE**.

3.     Beckham's Eighth Amendment claims alleging sexual abuse and/or sexual harassment asserted against Gary Beckstrom (EKCC Warden) and LaDonna Thompson (KDOC Commissioner) are **DISMISSED WITH PREJUDICE**.

4.     Beckham's Fourteenth Amendment due process claims challenging his prison disciplinary conviction and the resulting loss good-time credits, and his related First Amendment claims alleging that the disciplinary charge was

retaliatory, are **DISMISSED WITHOUT PREJUDICE** to Beckham's right to assert such claims in a petition for writ of habeas corpus under 28 U.S.C. § 2254.

5.      Beckham's claims against Defendants Gary Beckstrom (EKCC Warden), LaDonna Thompson (KDOC Commissioner), and David Bradley (KDOC official/PREA Compliance Manager), alleging violations of the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 *et seq.*, are **DISMISSED WITH PREJUDICE**.

6.      Beckham's *official capacity* Eighth and Fourteenth Amendment claims against Defendants Gary Beckstrom(EKCC Warden); David Bradley (KDOC official/PREA Compliance Manager); LaDonna Thompson (KDOC Commissioner); and Jonathan Keaton (EKCC Correctional Officer) are **DISMISSED WITH PREJUDICE**.

7.      The following individuals are **TERMINATED** as defendants from this proceeding: (a) Gary Beckstrom, EKCC Warden; (b) David Bradley, KDOC official/PREA Compliance Manager; and (c) LaDonna Thompson, KDOC Commissioner.

8.      Beckham's Eighth Amendment individual capacity claims against Defendant Jonathan Keaton (EKCC Correctional Officer) alleging sexual abuse **SHALL PROCEED**, and Keaton will be required to respond to those claims.

9.    The Clerk of the Court shall forward by certified mail, return receipt requested, one copy of the complaint [D. E. No. 1] and a copy of this Memorandum Opinion and Order to the Kentucky Department of Corrections, Office of Legal Services, 275 East Main Street, P. O. Box 2400, Frankfort, Kentucky 40602-2400.  The KDOC shall have twenty (20) days from the date on which it is served with this Order to complete and file a notice of waiver of service as to the one defendant who has been ordered to respond to Beckham's complaint. If the counsel for the KODC does not file a waiver within twenty (20) days of the date on which it is served with this Order, the Court will enter another order directing the United States Marshals Service to **personally** effectuate service of process on Defendant Jonathan Keaton in full compliance with Federal Rule of Civil Procedure 4, and Keaton will be required to file an answer no later than 20 days after being personally served with process.

10.    If the counsel for the KDOC does file a waiver within 20 days of the date on which it is served with this Order, Keaton's answer to the complaint shall be filed no later than sixty (60) days after the notice of waiver of service is filed.

11.    Beckham shall keep the Clerk of the Court informed of his current mailing address.  **Failure to notify the Clerk of any change of address may result in a dismissal of this case.**

12.    With every notice or motion filed with the Court, Beckham *must* (a) mail a copy to each defendant (or his or her attorney); and (b) at the end of the notice or motion, certify that he has mailed a copy to each defendant (or his or her attorney) and the date on which this was done.  **The Court will disregard any notice or motion which does not include this certification.**

This March 10, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge